**E-FILED**
Friday, 31 October, 2008  05:21:20 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MEYUNTOE DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  06-3282 |
| | ) | |
| DONALD A. HULICK, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

### <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Petitioner Meyuntoe L. Davis' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 1-2) (Petition).  For the reasons stated below, the Court finds a hearing unnecessary and denies the Petition.

### <u>FACTS</u>

Davis currently is incarcerated at the Illinois Department of Corrections Menard Correctional Center, where he is serving a thirty-year sentence on a conviction for first-degree murder.  In November of 1999, a jury in the Circuit Court of Sangamon County, Illinois, convicted him of murdering Angela Willis in an incident at a party.  Davis asks the Court to

reduce his conviction to one for involuntary manslaughter and credit him the time he has already served.

On the night of January 15, 1999, Tanicka McCool and two of her friends hosted a party at McCool's house.  Between 75 and 100 people attended, including Davis and Willis.  McCool testified that the attendees congregated in the living room, kitchen, dining room, and the stairs in the dining room.  McCool's brother testified that during the party, people were packed into the dining room shoulder-to-shoulder.  Multiple witnesses told the jury that shortly after midnight, shots were fired at the house.  An unidentified individual fired two shots into the ceiling while standing at the base of the stairs in the dining room.  The shooter then ran up the stairs.  After a brief pause, additional shots were fired.

McCool's mother stated that just before the shots were fired, she walked through the house and observed 30 to 40 people, including Willis, in the dining room.  McCool's brother testified that after he heard the initial set of shots, he looked into the house from where he was standing on the porch and saw Davis fire several shots in Willis' direction.  Tanicka McCool told the jury that when she heard the shots, she was in the dining room with about 40 people.  Someone pushed her to the floor, and she crawled to the

kitchen and ran to the basement.  When she came back upstairs, she saw Willis lying on the floor near the dining room stairs; Willis had been shot in the head.

A young woman named Annaji McLemore also testified at trial. McLemore lived in Las Vegas, Nevada, but was visiting family and friends in Springfield at the time of the shooting.  She considered Tanicka McCool a best friend.  McLemore told the jury that she attended McCool's party that night, and shortly after midnight, four girls walked into the living room where she was standing.  The girls said that there was going to be a fight. McLemore looked into the dining room and then heard shots coming from near the stairs.  Chaos erupted, with people running everywhere, dropping to the ground, and huddling in corners.  She then saw a man backpedal toward her and fire a gun toward the area near the stairs.  McLemore stated that while the backpedaling man was shooting, people were on the stairs and on a dresser near the stairs, lined up against the walls, lying on the floor, and huddled in corners of the dining room.  She saw Willis try to hide behind the dresser near the stairs.  At trial, McLemore identified Davis as the man who backpedaled toward her and fired a gun toward the stairs.  The morning after the party, however, Springfield Police Sergeant Doug

3

Williamson showed McLemore a mug shot book that included Davis' photograph, and Williamson testified that she was not able to identify Davis from the book.

The day after the party, Springfield police officers also interviewed Davis. Williamson testified that Davis denied having a gun at the party. Two days later, however, the officers interviewed Davis again. This time, Davis admitted that because he was angry that someone shot at him, he fired six shots in the direction of the stairs. He said he did not think he could have hit anyone because by the time he started firing, everyone still in the dining room was on the ground. Lab tests found that the bullet that struck Willis and the bullets recovered from the dresser near the stairs came from a gun belonging to Davis.

In closing argument, the State argued that while Davis never intended to kill Willis, he nonetheless committed first degree murder under two theories viable in Illinois. First, he created a strong probability of death or great bodily harm by firing into a crowded room. Second, he committed a felony -- aggravated discharge of a firearm -- and death resulted.

The defense, however, contended that while Davis did kill Willis, when he shot his gun he did not believe anyone was in the line of fire, which

would make conviction under either theory of murder improper.   The
defense argued that because he did not believe anyone was in the direction
he was firing, he did not create a strong probability of death or great bodily
harm, and he did not commit aggravated discharge of a firearm.

The State relied in part on McLemore's testimony in countering the
defense argument.  In closing argument, defense counsel told the jury that
McLemore had "very little credibility," "no credibility whatsoever," and
"finally did admit she didn't know where people were."  Answer (d/e 11),
Exhibit N-4, Trial Transcript, at 66; Answer, Exhibit N-5, Trial Transcript,
at 99, 101.  In its rebuttal closing, the State asserted that McLemore had no
reason to give false testimony:

> She is the one person who comes to this area once or twice a
> year to visit relatives.  She's moved, she doesn't live in this area
> anymore, she doesn't talk to people in this area, hang out with
> the people in this area, socialize with the people in this area.
> She's not friends with the Defendant's group, she's not friends
> with the victim's group at this point.
>
> She's in Las Vegas and she's got her own life out there.  She was
> brought back in because of the fact she has no reason to lie, no
> reason to fabricate, no reason for bias in this case.  She's only in
> the area a couple times a year; she just happened to be there
> that day.

Answer, Exhibit N-5, Trial Transcript, at 106-07.  The State also noted that

5

McLemore had been frustrated during the defense's cross-examination of her. Toward the end of her testimony, the defense attorney challenged her on her memory of where people were during the shooting. They had the following exchange:

> Q.   Do you know where those people are or are you just guessing?
>
> A.   Do I know where who is?
>
> Q.   Those individuals that were at the dresser.
>
> A.   No, I don't know where they went to. I told you everybody was looking. You got to explore your options.
>
> Q.   You don't really know where anybody was, do you? You're just guessing today.
>
> A.   Yeah, I'm just guessing, just for you.
>
> Q.   Isn't that right?
>
> A.   No, that's not right.

Answer, Exhibit N-21, Trial Transcript, at 230-31. In its closing argument, the State referenced this portion of McLemore's testimony, stating:

> I can understand how an individual under those circumstances would become frustrated. At the end of her testimony,[defense counsel] and Miss McLemore were certainly not getting along too well. There's open hostility in the courtroom, and she looked at him at the end, and [defense counsel] asked her the question, "You don't know where anybody was, do you?" And,

she said in an extremely sarcastic tone --

. . . .

She said, "You're right, [defense counsel], I don't know any of this, I don't know who anybody was, I was making it up just for you."

When she said that, quite frankly, she was smarting off is what she was doing. She wasn't swearing and testifying under oath she doesn't know everything that happened, and I'm sure [defense counsel] was not deliberately trying to lead you to believe that was her sworn testimony.

And, I think we all know what the context in which that statement was made. She was a frustrated young lady and made a sarcastic comment, but she certainly never testified that she didn't know all these things happened.

Answer, Exhibit N-5, Trial Transcript, 107-08.

The jury convicted Davis of first-degree murder, but found that he did not commit aggravated discharge of a firearm. Thus, Davis was convicted under the theory that he created a strong probability of death or great bodily harm by firing into a crowded room.

Davis appealed his conviction, raising one argument relevant to this habeas proceeding. He argued that the State failed to prove the requisite mental state for first-degree murder. The Illinois Appellate Court affirmed, ruling that evidence such as Davis' admission that he fired a gun in Willis'

direction, the match between his gun and the bullet recovered from Willis' body, and the testimony that many individuals were in the area when Davis fired, sufficed to establish his mental state.

Davis filed a petition for leave to appeal (PLA) before the Illinois Supreme Court reasserting that the State failed to establish the requisite mental state for first-degree murder. The Illinois Supreme Court denied his PLA.

Davis then filed a post-conviction petition in the state trial court. After the court appointed counsel, he filed an amended and supplemental petition. In this petition, Davis argued that his trial counsel was ineffective for failing to object to statements by the prosecutor during closing argument and for failing to object to McLemore's in-court identification of him. The state trial court dismissed his petition.

Davis appealed, and the Illinois Appellate Court affirmed the dismissal of his post-conviction petition. The court noted that Davis' trial attorney objected to some prosecution remarks during closing argument and held that any failure to object to other remarks constituted trial strategy, and therefore did not amount to ineffective assistance. Additionally, the court held that Davis could not show that his attorney was ineffective for failing

to object to McLemore's in-court identification because identity was not an issue at trial.

After the Appellate Court affirmed, Davis filed a PLA in the Illinois Supreme Court. He again argued ineffective assistance of counsel regarding the failure to object to the State's closing argument comments and McLemore's in-court identification. The Illinois Supreme Court denied his petition.

On November 24, 2006, Davis timely filed this Petition for writ of habeas corpus. In his Petition, Davis raises three claims. He argues that: (1) his conviction rests on insufficient evidence of his mental state; (2) the prosecutor's remarks in closing argument violated his Fourteenth Amendment due process right; and (3) his trial attorney's failure to object to McLemore's in-court identification constituted ineffective assistance.

<u>ANALYSIS</u>

None of Davis' claims persuade the Court that habeas relief is appropriate here. His due process claim cannot surpass the hurdle of procedural default. His sufficiency of the evidence and ineffective assistance of counsel claims fail on the merits. Because no disputed issues of fact are vital to the Court's decision, an evidentiary hearing is unnecessary.

I.     Due Process Claim

In his Petition, Davis argues that he was denied his Fourteenth Amendment right to due process when the prosecutor made comments regarding McLemore's testimony.   Specifically, Davis asserts that the prosecutor ignored the evidence of McLemore's close friendship with Tanicka McCool when he stated that McLemore had no reason to lie to the jury and improperly attacked defense counsel's integrity by accusing him of misleading the jury and by asserting that McLemore became sarcastic because of his cross-examination.  In his post-conviction proceedings in the state courts, Davis complained of these same comments, but he argued only that his trial attorney's failure to object to them constituted ineffective assistance of counsel.  By failing to raise this issue as a due process claim in the state courts, Davis procedurally defaulted it.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal."  Bousley v. United States, 523 U.S. 614, 621 (1998) (internal quotation marks omitted).  Before obtaining a writ of habeas corpus in federal court, a petitioner must demonstrate that he fully and fairly presented all of his federal claims to the state court before seeking federal habeas relief.  Harris v. McAdory, 334 F.3d 665, 668 (7th Cir. 2003).

The petitioner must have raised his claim at each appropriate stage of the state review process, and at each stage, he must have alerted the state courts of its federal basis.  Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004). The Seventh Circuit has held:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim.

Verdin v. O'Leary, 972 F.2d 1467, 1473-74 (7th Cir. 1992).  Failure to afford the state courts a meaningful opportunity to consider the federal basis of a claim constitutes procedural default.  Id.

Here, the state courts did not have a meaningful opportunity to consider Davis' due process claim.  Davis neglected to complain of the prosecutor's remarks in any way on direct appeal.  Moreover, when he raised them in post-conviction proceedings, he alleged only ineffective assistance of counsel.  He cited no federal or state cases addressing due process law; his ineffective assistance of counsel claim was not pleaded in such a way as to call to mind due process rights; and he failed to allege a pattern of facts well

within the mainstream of due process analysis.

Moreover, while a petitioner can revise his argument slightly in a habeas proceeding without running up against procedural default, Davis' due process argument is not a "mere variation" on his ineffective assistance claim.  See Sweeney v. Carter, 361 F.3d 327, 332 (7th Cir. 2004).  An ineffective assistance of counsel claim and a claim based on the alleged error to which counsel failed to object constitute two entirely different issues.  Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004).  "[T]he fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise."  Id.  Davis procedurally defaulted his due process claim.

Where a petitioner defaulted his claims, a federal court cannot grant any relief on those claims "unless the petitioner demonstrates cause for the default and actual prejudice as a result of the failure, or demonstrates that the failure to consider the claims will result in a fundamental miscarriage of justice."  Harris, 334 F.3d at 668 (citing Dellinger v. Bowen, 301 F.3d 758, 764 (7th Cir. 2002)).  Cause exists only where an external impediment blocked the petitioner from asserting his federal claim in state court.

Murray v. Carrier, 477 U.S. 478, 488 (1986).  A petitioner has been prejudiced only where the error claimed "worked to his actual and substantial disadvantage," infecting his entire trial or appellate proceeding with "error of constitutional dimensions;" an error that created the *possibility* of prejudice is not enough.  United States v. Frady, 456 U.S. 152, 170 (1982).  Davis does not contend that he can establish cause for the default or actual prejudice.  Instead, he asserts that the failure to consider his due process claim will result in a fundamental miscarriage of justice.

The fundamental miscarriage of justice exception applies only where the constitutional violation probably resulted in the conviction of a defendant who was "actually innocent."  Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003).  In the default context, actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  Schlup v. Delo, 513 U.S. 298, 315 (1995) (omitting internal quotation marks).  Where a petitioner who defaulted on a claim of constitutional error presents such significant evidence of actual innocence that a court cannot be confident in his conviction unless it also is satisfied that no harmful constitutional error marred the trial, "the

13

petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." Id. at 316. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.

To establish actual innocence, Davis must show that in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him. Schlup, 513 U.S. at 327-28. Importantly, however, a petitioner may advance such a claim only by presenting "*new* reliable evidence" of his innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Id. at 324 (emphasis added). Davis has offered no new evidence, so his argument for actual innocence necessarily fails.

Because Davis cannot establish actual innocence, he cannot show that a failure to consider his due process claim will result in a fundamental miscarriage of justice. Thus, he cannot overcome his procedural default. Because Davis defaulted his due process claim, it does not provide grounds for habeas relief.

II.    Sufficiency of the Evidence

Davis also argues that the State failed to introduce sufficient evidence

to support a conviction for first-degree murder, but this claim fails on the merits.  Davis asserts that the State failed to show that he knew anyone was in the line of fire when he shot his gun.  However, the state courts consistently rejected this argument, and this Court finds no justification for disturbing their judgments.

This Court may issue a writ of habeas corpus to a state official only if the state court decision denying a petitioner's claims was: (1) contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  If the state court identified the correct rule of law, then this Court will deny the habeas petition unless the state court's application of the law was not minimally consistent with the facts and circumstances of the case.  Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997).

In reviewing a state court's application of federal law, this Court must employ a "highly deferential standard."  Woodford v. Visciotti, 537 U.S. 19, 24 (2002).  A federal court may not confer habeas relief merely because it disagrees with a state court's decision; federal courts may intervene only

when a state court judgment "is objectively unreasonable."  Id. at 20, 27. As long as a state court decision is not "contrary to" United States Supreme Court precedent or premised on an "unreasonable determination of the facts," it is not objectively unreasonable.  28 U.S.C. § 2254(d)(1)-(2).

In considering the second requirement -- whether a state court decision was based on an unreasonable determination of the facts -- this Court must presume that all factual findings by the state courts are correct. 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption, but only through clear and convincing evidence.  Id.

At each stage of his direct appeal, Davis argued that the evidence admitted against him was insufficient for conviction.  Because the state courts employed the correct rule of law and their application was at least minimally consistent with the facts and circumstances of the case, this Court cannot grant Davis' request.  See Sweeney, 113 F.3d at 718.

In Jackson v. Virginia, the United States Supreme Court held that evidence is sufficient to support a criminal conviction if, viewing it in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. 307, 319 (1979); Johnson v. Bett, 349 F.3d 1030, 1034

(7th Cir. 2003).  The Illinois Appellate Court relied on this same standard in finding that the evidence against Davis was sufficient.  <u>See</u> <u>Answer</u>, Exhibit A, <u>Illinois Appellate Court Opinion</u>, at 15 ("[T]he relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime.").

Because the Illinois court identified the proper standard, the fact that the court cited to Illinois case law, as opposed to United States Supreme Court precedent, is irrelevant.  <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (holding that state courts need not even be aware of Supreme Court cases, so long as their reasoning and conclusions do not contradict them).

Moreover, the state court applied this standard reasonably.  First, it stated that to convict under the strong probability of death theory of first-degree murder, the State had to prove beyond a reasonable doubt that in performing the act that caused death, Davis had to know that this act created a strong probability of death or great bodily harm.  The court noted that a defendant's intent can be inferred from the character of his actions. It then held:

Based on the testimony that (1) defendant admitted firing his gun six times in the direction of the stairs, (2) a bullet fired from defendant's gun struck Willis in the head and killed her, (3) just prior to defendant's firing shots, between 30 and 40 partygoers were in the dining room, and (4) while defendant was firing his gun, "people were everywhere" in the dining room, and four or five people, including Willis, were trying to hide behind the dresser near the stairs, the jury could conclude that defendant performed the acts that caused Willis' death, knowing that such acts created a strong probability of death or great bodily harm to Willis or another person. Thus, reviewing the evidence presented under the appropriate standard of review, we conclude that a rational trier of fact reasonably could have found that defendant committed first degree murder.

Answer, Exhibit A, Illinois Appellate Court Opinion, at 15-16.

A state court decision is only unreasonable for habeas purposes if its application of United States Supreme Court precedent lies "well outside the boundaries of permissible differences of opinion." McFowler v. Jaimet, 349 F.3d 436, 447 (7th Cir. 2003) (internal quotation marks omitted). Davis argues that the State's sole evidence on whether he fired the gun knowing other people were in the room was McLemore's testimony, which he asserts is not credible. Yet, as the state court pointed out, numerous witnesses testified that the dining room was extremely crowded just prior to the shooting, and a rational juror could infer from this evidence that at least some people remained in the room when Davis fired his shots. Moreover,

Davis himself admitted to police that he knew people were in the dining room when he fired his shots.  The state court's decision does not lie outside the boundaries of permissible opinion.  Thus, Davis' sufficiency argument fails on the merits.

III.   Ineffective Assistance of Counsel

A merits' analysis also forecloses Davis' argument that his attorney's failure to object to McLemore's in-court identification of him constituted ineffective assistance of counsel.  To prove ineffective assistance of counsel, Davis must show that his attorney's representation was objectively deficient, and that the deficient representation caused him prejudice.  Strickland v. Washington, 466 U.S. 668, 688 (1984).  Moreover, to establish prejudice, a defendant must show a reasonable probability that but for counsel's deficient representation, the result of the proceeding would have been different.  Id. at 694.  In the post-conviction proceeding, the Illinois Appellate Court correctly held that the Strickland standard governs and noted that a defendant cannot prove prejudice without showing that counsel's performance probably changed the outcome of the proceedings.  Because the state court identified the proper law, this Court may not grant habeas relief unless the state court's application of that law was objectively

19

unreasonable.  See Woodford, 537 U.S. at 24.

The state court's analysis regarding Davis' attorney's failure to object to McLemore's identification was not unreasonable.  The state court held that "[b]ecause defendant's identity was not at issue at trial, even if such an objection would have been sustained, defendant cannot show that the outcome of his trial would have been different."  Answer, Exhibit H, Appellate Court Opinion, at 7.  This ruling is correct.  Davis never argued that he did not shoot Willis; indeed, ballistics evidence, Davis' own admission to police, and numerous witnesses established that Davis was the shooter.  Challenging McLemore's testimony on this point would not have changed the outcome of the trial.

Moreover, Davis has offered no grounds for objection to McLemore's identification of him.  He argues that had the jury known that McLemore could not pick him out of a mug shot book immediately following the shooting, "it is highly unlikely they would have given her testimony any credit; as it was filled with too many inconsistencies, contradictions, and improbabilities."  Reply (d/e 12), at 12.  First, the Court notes that the jury *did* know that McLemore could not pick Davis out of a mug shot book immediately following the shooting because Springfield Police Sergeant

Williamson told them so. Second, the alleged inconsistency between McLemore's pretrial and trial testimony might have been a point for exploration on cross-examination, but it did not provide a basis for objection under the rules of evidence. Additionally, Davis' cross-examination of McLemore highlighted the inconsistencies, contradictions, and improbabilities in her testimony regarding how crowded the room was at the time of the shooting -- a key issue at trial. Highlighting inconsistencies, contradictions, or improbabilities on a point Davis actually conceded likely would not have affected the outcome of the case.

THEREFORE, Petitioner Meyuntoe L. Davis' Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (d/e 1-2) is DENIED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  October 31, 2008

FOR THE COURT:

_____s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE